**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| GARY BRYANT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 9:20-cv-04217-DCN |
| vs. ) | |
| ) | **ORDER** |
| HODGES MANAGEMENT COMPANY, ) | |
| INC. and DAVID JOHNSON, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

The following matter is before the court on plaintiff Gary Bryant's ("Bryant") motion to remand, ECF No. 8. For the reasons set forth below, the court grants the motion to remand and denies as moot all other pending motions.

## I. BACKGROUND

This premises liability matter arises from an alleged slip-and-fall at the Kentucky Fried Chicken/Taco Bell (the "KFC") restaurant in Hampton County, South Carolina. Bryant alleges that, on October 6, 2017, he was walking on the KFC premises when he slipped on a foreign substance on the floor, causing him to fall and hit his head. Bryant claims that he suffered from a seizure and severe and permanent injuries as a result of his fall. Defendant Hodges Management Company Inc. ("HMC") is the corporation that owns and operates the KFC. Defendant David Johnson ("Johnson") was the manager on duty at the KFC at the time of Bryant's alleged injury.

On August 26, 2020, Bryant filed the instant action in the Hampton County Court of Common Pleas, asserting negligence claims against both HMC and Bryant (collectively, "defendants"). ECF No. 1-1, Compl. On December 4, 2020, HMC

1

removed the action to federal court.  ECF No. 1.  On December 29, 2020, Bryant filed a motion to remand to state court.  ECF No. 8.[1]  On January 12, 2021, defendants responded, ECF No. 9, and on January 19, 2021, Bryant replied, ECF No. 12.  As such, Bryant's motion to remand has been fully briefed and is now ripe for review.

## II.   STANDARD

Federal courts are of constitutionally limited jurisdiction.  "The party seeking removal bears the burden of demonstrating that removal jurisdiction is proper," In re Blackwater Sec. Consulting, LLC, 460 F.3d 576, 583 (4th Cir. 2006), and doubts regarding the propriety of removal are to be resolved in favor of retained state court jurisdiction, Baxley v. Advance Auto Parts, Inc., 2011 WL 586072 at *1 (D.S.C. Feb. 9, 2011) (citing Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)).  Because removal raises significant federalism concerns, "[i]f federal jurisdiction is doubtful, a remand is necessary."  Mulcahey v. Columbia Organic Chemicals Co., 29 F.3d 148, 151 (4th Cir. 1994).

Generally, any civil action brought in a state court of which the district courts of the United States have original jurisdiction may be removed by the defendant to the district court of the United States for the district and division embracing the place where such action is pending.  28 U.S.C. § 1441(a).  Original jurisdiction exists where a claim arises from federal law, see 28 U.S.C. § 1331, or where the amount in controversy

---

[1] In his motion to remand, Bryant also requests that the court stay the deadlines for Johnson's motion to dismiss, ECF No. 3, until resolution of Bryant's motion to remand.  Defendants do not address Bryant's request for a stay.  Because the court grants the instant motion to remand for reasons explained herein, the court denies as moot Bryant's motion to stay and Johnson's motion to dismiss.

exceeds the sum or value of $75,000 and the claim is between citizen of different states, see 28 U.S.C. § 1332.

Under the fraudulent joinder doctrine, "a district court can assume jurisdiction over a case even if, inter alia, there are nondiverse named defendants at the time the case is removed." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). "This doctrine effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Id. "To show fraudulent joinder, the removing party must demonstrate either (1) outright fraud in the plaintiff's pleading of jurisdictional facts or (2) that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999) (internal quotation marks omitted). "The burden on the defendant claiming fraudulent joinder is heavy: the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor." Marshall, 6 F.3d at 232–33. "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Hartley, 187 F.3d at 424; see also Beaufort Cnty. Sch. Dist. v. United Nat. Ins. Co., 519 F.Supp. 2d 609, 614 (D.S.C. 2007) (describing the standard as "among the most liberal in all of the law"). The plaintiff need not establish that he will ultimately succeed on his claims; "[t]here need be only a slight possibility of a right to relief." Hartley, 187 F.3d at 426. Further, in determining "whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine

3

the basis of joinder by any means available.'" AIDS Counseling & Testing Centers v. Grp. W Television, Inc., 903 F.2d 1000, 1004 (4th Cir. 1990) (quoting Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964)).

### III.   DISCUSSION

Bryant moves the court to remand this action to the Hampton County Court of Common Pleas.  The parties agree on the basic jurisdictional facts: Bryant and Johnson are both residents and citizens of South Carolina, while HMC is a citizen of Georgia because it is incorporated in Georgia and has its principal place of business in Georgia. Bryant argues that the court does not have subject matter jurisdiction over this action, and therefore must remand, because Bryant and Johnson are both citizens of South Carolina—meaning there is not complete diversity between the parties.  Defendants argue that the court should disregard Johnson's citizenship for jurisdiction purposes under the doctrine of fraudulent joinder because Johnson is a "sham defendant."  ECF No. 9 at 2. Because defendants have not alleged fraud in Bryant's pleading of jurisdictional facts, the court must determine whether there is any possibility that Bryant can establish a cause of action against Johnson in a South Carolina state court.  If so, this case must be remanded. See Jones v. Ringer, 2017 WL 5077870, at *3–4 (D.S.C. Nov. 6, 2017).

Bryant's claim against Johnson is rooted in negligence.  "In a negligence action, a plaintiff must show the (1) defendant owes a duty of care to the plaintiff, (2) defendant breached the duty by a negligent act or omission, (3) defendant's breach was the actual and proximate cause of the plaintiff's injury, and (4) plaintiff suffered an injury or damages." Andrade v. Johnson, 588 S.E.2d 588, 592 (S.C. 2003).

4

"The Court must determine, as a matter of law, whether the law recognizes a particular duty." Cowburn v. Leventis, 619 S.E.2d 437, 451 (S.C. Ct. App. 2005) (quoting Charleston Dry Cleaners Laundry, Inc. v. Zurich Am. Ins. Co., 586 S.E.2d 586, 588 (S.C. 2003)). In South Carolina, a property owner owes customers a duty of ordinary care to maintain parts of the store ordinarily used by customers in a reasonably safe condition, and the owner is liable for any injury resulting from a breach of this duty. Richardson v. Piggly Wiggly Cent., Inc., 743 S.E.2d 858, 859–60 (S.C. Ct. App. 2013). "Generally, property owners only have a duty to warn invitees of 'latent or hidden dangers of which the property owner has or should have knowledge,' and are not obligated to warn others of 'open and obvious conditions.'" Id. To recover specifically against a storekeeper for injuries caused by a "dangerous or defective condition" on the premises, a plaintiff "must show either (1) that the injury was caused by a specific act of the defendant which created the dangerous condition; or (2) that the defendant had actual or constructive knowledge of the dangerous condition and failed to remedy it." Wintersteen v. Food Lion, Inc., 542 S.E.2d 728, 729 (S.C. 2001). Although a merchant is not an insurer of the safety of his customers, he owes a duty to keep aisles and passageways in a reasonably safe condition." Id. at 730 (internal citation omitted). "This duty includes a duty to reasonably inspect the premises and to remove debris that could cause the customer to fall." Benjamin v. Wal-Mart Stores, Inc., 413 F. Supp. 2d 652, 655 (D.S.C. 2006) (citing Hunter v. Dixie Home Stores, 101 S.E.2d 262, 263 (S.C. 1957)).

A person who operates a commercial establishment but is neither an owner nor a lessee may nonetheless have a duty to exercise reasonable care to maintain safe premises. Id. (citing Dunbar v. Charleston & W.C. Ry. Co., 44 S.E.2d 314, 317 (S.C.

1947)). Liability in such a situation depends upon control of the premises, not necessarily ownership. See Miller v. City of Camden, 494 S.E.2d 813, 815 (S.C. 1997); Nesbitt v. Lewis, 517 S.E.2d 11, 14 (S.C. Ct. App. 1999). Still, "merely being a manager or employee does not evidence a sufficient level of control." Benjamin, 413 F. Supp. 2d at 657. When evaluating whether a person has sufficient control—and thus a duty to inspect the premises for dangerous conditions—a court should consider the person's power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee the management of the property. Id. at 655–56 (citing C.J.S. Negligence § 388).

Under the South Carolina premises liability framework, defendants argue that Bryant cannot maintain a cause of action against Johnson for three reasons. First, Bryant does not allege that Johnson knew of any dangerous condition that required him to warn Bryant. Second, Johnson did not have sufficient level of control over the KFC to be held liable. And third, video surveillance undermines Bryant's claims. The court addresses each argument below, ultimately disagreeing with respect to each.

**A. Knowledge**

To begin, defendants argue that Bryant cannot recover from Johnson because Bryant has not alleged that Johnson knew of any dangerous condition that required him to warn Bryant. In the instant case, Bryant alleges that Johnson and HMC were negligent in "creating, or allowing to maintain, a foreign substance" on the floor. Compl. at 4. To establish a cause of action for failure to warn of a dangerous condition in South Carolina, Bryant need only show that Johnson created the condition or had knowledge of it; not both. Wintersteen, 542 S.E.2d at 729 ("[A] plaintiff must show that the defendant either

6

(1) created the defective condition or (2) had knowledge of the dangerous condition and failed to remedy it."). As such, Bryant is not required to show that Johnson knew of the alleged condition if he can show, as he alleges, that Johnson created it. Defendants have not argued, much less convinced the court, that Bryant could not possibly make such a showing after the benefit of discovery.

Moreover, Bryant could, after benefit of discovery, establish that Johnson had actual knowledge of the condition or at least constructive knowledge based on the length of time the foreign substance existed on the floor. "[A] defendant will be charged with constructive notice whenever it appears that the condition has existed for such length of time prior to the injury that, under existing circumstances, he should have discovered and remedied it in the exercise of due care . . . ." Anderson v. Winn-Dixie Greenville, Inc., 184 S.E.2d 77, 77 (S.C. 1971). Bryant alleges that Johnson was negligent "in failing to inspect the premises for latent defects" and "allowing [the dangerous condition] to maintain," which both go to the issue of constructive knowledge. Compl. at 4.[2] It is conceivable that Bryant could demonstrate, after adequate discovery, that Johnson should have discovered and remedied the alleged condition of the floor.

Additionally, defendants do not address Bryant's allegations that Johnson was negligent in "failing to hire, train, and retain employees knowledgeable about how to

---

[2] Defendants argue that Bryant's complaint must contain more than "unadorned conclusory allegations" and "naked assertions of wrongdoing" to cross "the line between possibility and plausibility of entitlement to relief." ECF No. 9 at 8. However, this argument inappropriately appeals to the standard for a motion to dismiss and not the fraudulent joinder standard. As noted above, the fraudulent joinder standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Hartley, 187 F.3d at 424. And Bryant's allegations need not cross the line from possibility to plausibility because under the correct standard "[t]here need be only a slight possibility of a right to relief." Hartley, 187 F.3d at 426.

maintain its premises." Compl. at 4; see James v. Kelly Trucking Co., 661 S.E.2d 329, 330 (S.C. 2008) ("In circumstances where an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim [negligence] in hiring, supervising, or training the employee . . . ."). Without improperly "delving too far into the merits" of this negligence theory, Hartley, 187 F.3d at 425, the court notes that Johnson's lack of knowledge of a substance on the KFC floor certainly does not preclude a finding that Johnson negligently trained or hired employees to prevent the presence of such a dangerous condition. Because Bryant need not allege that Johnson had knowledge of the alleged dangerous condition under South Carolina negligence law, defendants have failed "to negate all possibility of recovery" via their first argument. Hartley, 187 F.3d at 425.

### B. Control

Second, defendants argue that Johnson did not have sufficient level of control over the KFC to be held liable for failing to maintain the KFC premises in a safe condition. Bryant alleges that Johnson was, at all relevant times, the manager of the KFC and "was operating the [KFC] within the scope of his employment." Compl. at 3. Bryant further alleges that "Johnson possessed and exercised the authority to manage, direct, superintend, restrict, regulate, govern, administer, and/or oversee the management of [the KFC] and to ensure compliance with all policies, standards, and procedures." Id. Defendants concede that Johnson had at least some control or authority over the KFC in his position as a manager by noting that after Bryant's fall, Johnson "exercised his authority as a manager to intervene and provide assistance." ECF No. 9 at 5. Based on this information, defendants have not met their heavy burden of demonstrating that there

is "no possibility" that Bryant can establish that Johnson had sufficient control over the KFC to maintain a cause of action against him. Hartley, 187 F.3d at 424. Bryant has alleged that Johnson had significant control over the KFC, and the court has no reason to believe that Bryant would be unable to make such a showing after discovery. See Patterson v. Wal-Mart Stores E. LP, 2020 WL 3056084, at *4 (D.S.C. June 9, 2020) (finding no fraudulent joinder in a negligence action related to a trip-and-fall in a Wal-Mart store when plaintiff alleged that the defendant in question was a manager of the entire store and not just a department manager); Hardrick v. Wal-Mart Stores Inc., 2018 WL 3867805, at *3 (D.S.C. Aug. 15, 2018) (finding no fraudulent joinder in a negligence action for failure to warn of a defective shelf when plaintiff "clearly alleged that, as manager for the entire store, [the defendant] exerted a high level of control over the premises."); Mobley v. Wal-Mart Stores, Inc., 2010 WL 503101, at *5 (D.S.C. Feb. 8, 2010) (finding that because the defendant-manager was not "a lower-level employee" and had a "high level of control over the store," there was at least a possibility under South Carolina law that "she had the authority to search for and discover, or warn customers against, defects in the Wal-Mart store parking lot."). If Bryant were to show that Johnson exercised sufficient control over the KFC, a South Carolina court could find that such control imposed upon him a duty to maintain and inspect the premises or warn Bryant of and make safe dangers within the store. Thus, there is a certainly a "glimmer of hope" that Bryant can maintain a cause of action against Johnson. See Hartley, 187 F.3d at 424 ("There need be only a slight possibility of a right to relief. Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends.").

### C. Video Surveillance

Third, defendants argue that video surveillance shows that Bryant did not "slip" and that Johnson was not present in the area prior or during Bryant's injury, but "only afterwards [] exercised his authority as a manger to intervene and provide assistance." ECF No. 9 at 5. The court again is unpersuaded. The court need not make a factual determination at this stage regarding the presence of water on the floor or whether Bryant actually slipped on that water. On the contrary, the court must resolve all issues of fact in Bryant's favor. Marshall, 6 F.3d at 232–33.[3] Moreover, the court fails to see how these issues bear on the question of fraudulent joinder. Defendants' argument that water was not on the floor and Bryant did not slip on the water relate to the plausibility of Bryant's claims against both Bryant and HMC. As such, rather than arguing that Johnson is a sham defendant, defendants effectively argue that this is a sham case. The court will not address such an argument regarding the merits of the case in the context of this motion to remand. See Hartley, 187 F.3d at 425 ("To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules."). Additionally, even if Johnson were not present prior to or during Bryant's fall, as defendants assert the video evinces, this fact would not preclude liability. See Patterson, 2020 WL 3056084, at *5 ("South Carolina premises liability law imposes no requirement that a possessor of land be physically present on the premises at the time an invitee is injured for the possessor to be held liable for his or her invitee's injuries."). Johnson's

---

[3] In their response, defendants argue both that video surveillance clearly shows no substance was on the floor and that, if there were a substance on the floor, it was open and obvious. The court need not address this conundrum at present, since whether any condition was open and obvious is also a question of fact to be resolved in Bryant's favor for purposes of the present motion to remand.

liability depends on his control over the premises, not his presence at the time of injury. As explained above, a South Carolina court could find that the extent of Johnson's control over the store imposed upon him a duty to maintain and inspect the premises and warn of or make safe dangers within the store. Therefore, the court cannot foreclose the possibility that Bryant would be able to establish a cause of action against Johnson. The court's limited inquiry ends there.

Mindful that the fraudulent joinder standard is "among the most liberal in all of the law," Beaufort Cnty. Sch. Dist., 519 F.Supp.2d at 614, the court finds Johnson was properly joined and considers his citizenship for purposes of diversity jurisdiction. Since both Bryant and Johnson are citizens of South Carolina, there is not complete diversity between the parties. The court lacks subject matter jurisdiction and must remand the matter to state court.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to remand, **DENIES AS MOOT** all other pending motions, and **REMANDS** this action to the Hampton County Court of Common Pleas.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**May 19, 2021**
**Charleston, South Carolina**